**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
NINA OTTAVIANO, an infant, by her father and natural
guardian, JOHN OTTAVIANO,

                                Plaintiff,

        -against-

KINGS PARK CENTRAL SCHOOL DISTRICT, KINGS
PARK CENTRAL SCHOOL DISTRICT BOARD OF
EDUCATION, SUSAN AGRUSO, LINO BRACCO,
WILLIAM MOTHERWAY, MARIE GOLDSTEIN,
STEVE WEBER, TOM LOCASCIO, and LIZ BARRETT
(individually and in their official capacities),

                            Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
10-CV-4962 (ADS) (AKT)

**APPEARANCES:**

**Leeds Morelli & Brown, P.C.**
*Attorneys for the Plaintiff*
One Old Country Road, Suite 347
Carle Place, NY 11514
       By: Jeffrey Kevin Brown, Esq., Of Counsel

**Sokoloff Stern LLP**
*Attorneys for the Defendants*
355 Post Avenue, Suite 201
Westbury, NY 11590
       By: Adam I. Kleinberg, Esq., Of Counsel

**SPATT, District Judge**.

       This case arises from the decision of the above named defendants (collectively the

"Defendants") to suspend Nina Ottaviano ("Nina" or the "Plaintiff") from all extracurricular

activities for one year following her admission that she provided another student with alcohol.

The Plaintiff filed this action alleging that the Defendants: 1) violated the Equal Protection

Clause of the Fourteenth Amendment by imposing a harsher punishment on her than on other

students who committed less serious infractions; and 2) improperly discriminated against her

under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 et seq., by preventing her from participating in sports for one year when male athletes who also committed alcohol related infractions were not banned for one year.

On December 13, 2010 the Plaintiff moved by order to show cause for a temporary restraining order and a preliminary injunction against the Defendants requiring them to allow her to participate in extracurricular activities generally, and in varsity basketball specifically. The Court scheduled the case for a hearing on the order to show cause for December 15, 2010. On that date, the Plaintiff waived a hearing for a temporary restraining order and a preliminary injunction.

Upon a review of the arguments set forth in the parties' submissions and the relevant law, for the reasons set forth below, the Court denies the Plaintiff's motion for a temporary restraining order and preliminary injunction.

## I.  BACKGROUND

### A.  Factual Background

The following facts are taken from the parties' submissions, as well as the Affidavit of John Ottaviano ("Ottaviano Affidavit"), the Affidavit of Lino Bracco ("Bracco Affidavit") and the Affidavit of Susan Agruso ("Agruso Affidavit"). As discussed later in the opinion, unless evidence is presented to the contrary, the Court considers all the relevant facts as true.

Nina Ottaviano is a student in her senior year at Kings Park High School. On September 16, 2010, approximately two weeks into the 2010-2011 school year, Nina attended a school function called the "Senior Banquet." The Senior Banquet is an annual event hosted by the Kings Park Central School District that is held off the school grounds for all of the senior students at the high school. Students are transported to the Senior Banquet by buses that leave

from the high school. As the students boarded the bus to attend the Senior Banquet, a minor female student—referred to throughout this opinion as "M.S."—was caught with a hairspray bottle containing alcohol. After the Senior Banquet was over, Nina approached the principal of the school, the defendant Lino Bracco ("Bracco" or "Principal Bracco") and admitted to having provided M.S. with the alcohol. The parties dispute whether Nina brought the alcohol to school, or whether she was simply a conduit who passed the alcohol from one student to M.S. The parties also dispute whether Nina gave M.S. the alcohol on school grounds.

On September 17, 2010, Nina met with Principal Bracco who informed her that her punishment would be a two day suspension. This suspension was one day longer than the suspension received by M.S. because M.S. was not permitted to attend the Senior Banquet. Subsequently, Principal Bracco, who was new to the position, consulted Superintendent Susan Agruso ("Agruso" or "Superintendent Agruso"), also a defendant in this action, and the athletic director to ascertain the policy for punishing students who possessed alcohol on school grounds. Superintendent Agruso and the athletic director informed Principal Bracco that the offense carried a one-year suspension from all extracurricular activities, including athletics. Principal Bracco relayed this information to Nina and her parents in a conversation later that day, and informed them that the punishment was part of the school's "zero-tolerance policy" for possession of alcohol on school grounds. Prior to the disciplinary action giving rise to this case, Nina was a member of the National Honor Society, Students Against Drunk Driving, an editor of the Kings Park High School Newspaper, a varsity soccer player and a varsity basketball player. Nina's punishment meant she could not participate in any of these activities, or any new extracurricular activities, for the remainder of her senior year. In addition, Nina will not be able

to list on her college applications that she participated in any extracurricular activities during her senior year.

**B.  The Policies**

There are three policies that govern the discipline of students.  The first is the District's Code of Conduct, which is distributed annually as part of the school calendar (the "Calendar Policy").  (Brown Decl., Ex. A.)  The Calendar Policy lists possession of alcohol as a "Level 5 Infraction," and provides that one possible disciplinary action for committing a Level 5 Infraction is the "[r]emoval of student for calendar year from extracurricular, co-curricular and athletic activities."  (Id.)  The second policy is the Athletic Participation Policy, which states: "No student/athlete will possess or consume alcoholic beverages at any time or place during the school year" and that "[a]ny violation of the drug and alcohol policy will result in a one year suspension starting from the date of the incident."  (Brown Decl., Ex. B.)  The third policy is a policy that appears on the athletic department's folder and is referred to as the "Athletics Folder Policy," which states in relevant part that "[f]ailure to adhere to [the Board of Education and Athletic Department Rules] rules and policies might result in your suspension and/or dismissal from the team."  (Brown Decl., Ex. C.)

In her Affidavit, Superintendent Agruso states that although these policies are discretionary and can be altered, the school has interpreted the policies to establish the following rules:

> The District categorizes offenses involving unlawful and/or controlled substances into three categories and administers discipline accordingly. These are generally:
>
> 1. Caught in possession of a controlled substance at school or school events - suspension from school plus an automatic 1 year suspension from extra-curricular activities, including athletics.

2. Caught intoxicated at school, on school grounds, or at school-sponsored events -suspension from school as well as discipline according to team rules.

3. Intoxication outside of school - the District administrators generally do not get involved with such matters, however, coaches may discipline their teams as necessary.

(Agruso Aff. ¶ 32.)  In Nina's case, the school determined that her transgression fell into the first category, and Agruso stated that the school has a "zero-tolerance" policy for infractions falling into that category.  (Id. ¶ 33.)

## C.  Procedural Background

In October 2010, after seeking reconsideration by Bracco and Agruso to no avail, the Plaintiff appealed the extracurricular ban to the defendant Kings Park Central School District Board Of Education (the "School Board").  On October 6, 2010 the School Board denied the appeal from the disciplinary proceeding determination.  As a result, the Plaintiff filed the instant action on October 28, 2010, alleging that the punishment she received violated the Equal Protection clause and Title IX.  Subsequently, on November 29, 2010, the Plaintiff initiated an Article 78 proceeding in Suffolk County Supreme Court appealing the Defendants' decisions and requesting that the Plaintiff be permitted to participate in extracurricular activities for the remainder of the year.  On December 13, 2010, with the Article 78 proceeding still pending and unresolved, the plaintiff filed the instant motion for a temporary restraining order and preliminary injunction seeking the identical relief to that being sought in the Article 78 proceeding.  As stated above, on December 15, 2010, the Court held an order to show cause hearing, where the parties addressed the issues discussed below.  At this hearing, plaintiff's counsel stated that Plaintiff waived her right to an evidentiary hearing:

MR. BROWN:  Your honor, we'd waive our right to a hearing. We'd like to submit the papers.  We've had I think positive communications with defendant's counsel based upon ideas you

gave us in your chambers. So we will get back to you by Friday whether or not we can reach a resolution, if that's okay with your Honor.

(Rough Tr.[1] 33:9–14.) On Friday, December 17, 2010, the Defendants wrote to the Court advising the Court that a resolution could not be reached and requesting permission to submit a supplemental affidavit by Agruso. In a response of the same date the Plaintiff stated:

> It is respectfully requested that this Court render its decision based upon the papers fully submitted on December 15, 2010 and disregard Defendant's late submission. Alternatively, if the Court deems necessary, Plaintiff requests a chance to respond to the new claims that Defendants have raised in their submission.

(Docket # 14.) Insofar as the supplemental affidavit did not address any new issues, the Court grants the Plaintiff's request to render the decision solely on the papers fully submitted on December 15, 2010. For the reasons set forth below, based on those submissions, the Court denies the Plaintiff's request for a temporary restraining order and preliminary injunction.

## II. DISCUSSION

### A. Whether the Court Should Stay this Action Pending the Outcome of the Article 78 Proceeding or Dismiss on Primary Jurisdiction Grounds

The Defendants have requested that the Court should deny the request for a temporary restraining order and preliminary injunction and either stay the federal action pending the outcome of the state Article 78 proceeding or dismiss on primary jurisdiction grounds. The Plaintiff did not submit a reply brief addressing these issues, nor did plaintiff's counsel address them at the December 15th order to show cause hearing. Because the Court ultimately denies the preliminary injunction and temporary restraining order on other grounds, it is not necessary to decide the stay or dismissal requests at this time. Accordingly, the Defendants' requests in this regard are denied, without prejudice.

---

[1] Citations to "Rough Tr." refer to a rough copy of the transcript from the December 15, 2010 order to show cause hearing.

**B. Preliminary Injunction**

"In order to justify a preliminary injunction, a movant must demonstrate 1) irreparable harm absent injunctive relief; and 2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.' Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010) (quoting Almontaser v. N.Y. Dep't of Educ., 519 F.3d 505, 508 (2d. Cir. 2008)). "When, as here, the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the more rigorous likelihood-of-success standard." Metro. Taxicab, 615 F.3d at 156 (quoting Cnty. of Nassau v. Leavitt, 524 F.3d 408, 414 (2d Cir.2008)); Lynch v. City of New York, 589 F.3d 94, 98 (2d Cir. 2009).

At the December 15, 2010 order to show cause hearing before this Court, the parties disputed what standard was applicable to the instant matter. The Court finds that the facts of this case support the imposition of the higher standard on the Plaintiff. First, the Plaintiff is requesting relief from the actions of the School Board, which is a government entity. See Cave v. East Meadow Union Free School Dist., 480 F.Supp.2d 610, 632 (E.D.N.Y. 2007) ("This higher standard is particularly appropriate when a plaintiff seeks a preliminary injunction against a government body such as a school district."). Second, neither party disputes that the School Board's disciplinary action was taken pursuant to "a statutory or regulatory scheme." Thus, this is a request for an injunction to affect government action and the Plaintiff was required to meet the "more rigorous likelihood-of-success standard" in order to prevail. See, e.g., Doninger v. Niehoff, 527 F.3d 41 (2d Cir. 2008) (applying the higher standard to preliminary injunction seeking to have the school vacate the results of the class officer election and permit the plaintiff

to participate); <u>D.D. ex rel. V.D. v. New York City Bd. of Educ.</u>, 465 F.3d 503, 510 (2d Cir. 2006) (applying the higher standard to a preliminary injunction motion seeking to require the New York City Department of Education and the New York State Education Department to implement all services required by the individualized education programs for disabled students); <u>Caviezel v. Great Neck Public Schools</u>, 701 F.Supp.2d 414 (E.D.N.Y. 2010) (applying the higher standard to a preliminary injunction seeking to require a school board to admit an unvaccinated student in violation of their policy); <u>Cave</u>, 480 F. Supp. 2d at 632 (applying the higher standard to a preliminary injunction motion seeking to require a school district to permit a hearing impaired student to bring in a service dog). However, the Court notes that even if it held the Plaintiff to the lesser standard, based on the presentation before the Court, the Plaintiff has failed to show a likelihood of success on the merits or a serious question going to the merits.

Finally, because the plaintiff has waived her right to an evidentiary hearing, it is important to address how the Court will treat the credibility of the parties' evidence. There is no dispute that all of the examples that the Plaintiff provided of the alcohol related transgressions of other students and the punishments they received are hearsay. The Plaintiff does not identify how she learned of these facts, or even how many levels of hearsay are involved. Conversely, the Agruso Affidavit identifies transgressions and punishments of other students that have occurred and are on the record. Had the Plaintiff chosen to proceed with an evidentiary hearing, she could have called the individuals referred to in the Octtaviano Affidavit to testify. Equally important, her counsel could have cross-examined Agruso on the situational circumstances of the examples set forth in the Agruso Affidavit. By waiving the evidentiary hearing and choosing to engage in a "battle of affidavits," the Plaintiff is essentially asking the Court to credit hearsay testimony over recorded facts confirmed in the affidavit of a school official.

Generally, "on a motion for a preliminary injunction, where essential facts are in dispute, there must be [an evidentiary] hearing . . . and appropriate findings of fact must be made." Fengler v. Numismatic Americana, Inc., 832 F.2d 745, 747 (2d Cir.1987) (internal quotation marks omitted). However, "[t]here is no hard and fast rule in this circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it." Consol. Gold Fields PLC v. Minorco, S.A., 871 F.2d 252, 256 (2d Cir. 1989). Where, as here, a party waives their right to an evidentiary hearing, they are "not entitled to have the court accept [their] untested representations as true if they are disputed." Charette v. Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir. 1998); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970) ("A party who chooses to gamble on [the 'battle of affidavits'] procedure cannot be heard to complain of it when the decision is adverse.").

However, the Court understands that disciplinary records are protected under privacy laws so that the Plaintiff would have had difficulty obtaining such information for the present motion. Further, because the possibility exists that, were this case to go to trial the Plaintiff may be able to provide corroborating evidence, the Court will accept the Plaintiff's alleged discriminatory examples as true. The Court finds that, even crediting the examples the Plaintiff provided, there is not a likelihood of success on the merits or a serious question going to the likelihood of the merits.

**1. As to Irreparable Harm**

"Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Forest City Daly Housing, Inc.

v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (quoting Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998)) (per curiam) (internal quotation marks omitted).

The Plaintiff argues that although she is seeking monetary damages, there will be irreparable harm if the injunction does not issue because "[n]o amount of money damages can restore these once in a life time opportunities to build character and memories and to facilitate [her] development from a young lady into a well rounded adult." (Pl.'s Br. at 6.) In addition, the Plaintiff claims that she will be irreparably harmed because the punishment impedes her opportunity to be accepted to college or to receive a basketball scholarship. To that extent the Plaintiff's brief states:

> [W]ith respect to applying to colleges, Nina is prejudiced by being prevented from participating in extra curricular sports and other activities. Nina is currently applying to several highly regarded and competitive educational institutions, and she cannot list any participation in extra curricular activities for her entire senior year. In the competitive atmosphere of college admissions, Nina's inability to demonstrate that she is an active member of the school community and a well rounded person hinders her ability to attract offers from educational institutions of a caliber that a student athlete like Nina would normally attend. . . . Not being able to list any extra curricular activities, especially after three previous years of being an extremely active member of teams and organizations, unjustifiably raises very negative inferences about Nina.

(Pl.'s Br. at 6-7 (internal citation omitted).)

In response, the Defendants first contend that the Plaintiff's claim that she will be irreparably harmed if she does not get to experience extracurricular activities in her senior year is equivalent to saying "plaintiff N.O. will be sad," which is an emotional harm that can be compensated through monetary damages. (Defs.' Br. at 12.) While the Court would not characterize the harm in such insensitive terms, the Court ultimately agrees that, while playing basketball and participating in extracurricular activities is personally important to Nina, they do not constitute an irreparable harm. See Doninger v. Niehoff, 514 F.Supp.2d 199, 211 (D. Conn.

2007), aff'd 527 F.3d 41 (2d Cir. 2008) ("The Court is less certain that being denied the opportunity to run for Senior Class Secretary—while obviously important to Avery herself—constitutes irreparable harm under the Equal Protection Clause of the Fourteenth Amendment."). However, while there are decisions to the contrary, this Court does believe that the inability to list extracurricular activities, especially during her senior year, on a college application, may very well constitute irreparable harm.

However, in this regard, courts have been less clear as to whether a punishment that impacts a student's ability to obtain college scholarships is an irreparable harm. On the one hand, whether Nina could get a basketball scholarship is still somewhat speculative, and unlike other cases that have found this to be an irreparable harm, Nina has not submitted any evidence of schools that have expressed an interest in presenting her with a scholarship offer. See Coleman v. Newburgh Enlarged City School Dist., 319 F. Supp. 2d 446, 453 (S.D.N.Y. 2004) (holding, after noting that the plaintiff had produced evidence of scholarship offers, that: "A college scholarship is a protected property interest because it advances an opportunity for a student to attend a college or university that he or she would otherwise be unable to attend or afford to attend. In the case at bar, the Plaintiff's chance of obtaining a scholarship and his opportunity to attend college, are jeopardized by the Defendants' actions in connection with the current incident and the resulting suspension.").

On the other hand, when the value of the missed opportunity is difficult to quantify, at least some courts have found that missing out on the opportunity constitutes an irreparable harm. Not knowing what colleges would have potentially recruited Nina, or whether she would have received a full or partial scholarship, makes this type of injury difficult to quantify. See Hall v. University of Minnesota, 530 F. Supp. 104, 107–08 (D. Minn. 1982) (holding that a college

basketball star would be irreparably harmed if he was declared ineligible to play basketball in his senior year because it posed a threat to his ability to obtain a type of contract with the NBA that would be difficult to quantify).

Ultimately, the Court finds that, even absent evidence of scholarship offers, the missed opportunity of a scholarship constitutes an irreparable harm. If Nina succeeds in having her punishment removed in the Article 78 proceeding or in this Court, when she eventually applies to colleges she can explain the absence of her extracurricular activities on her application. Conversely, if this punishment remains, she will not have the opportunity to play on a high school basketball team for college recruiters. This irreparable harm is not speculative. It is actual and imminent and could not be remedied with an award of monetary damages. In this Court's view, the Plaintiff has established the element of irreparable harm.

Finally, in this regard, the Defendants contend that "any claim of urgency or irreparable harm is disingenuous" because the Plaintiff received the punishment on September 17, 2010, and has already missed the entire soccer season. (Defs.' Br. at 13.) However, the Court chooses not to fault the Plaintiff for attempting to resolve this dispute without litigation or infer that the harm Nina sustained by missing the soccer season is equivalent to the irreparable harm of missing the basketball season.

### 2. As to the Likelihood of Success on the Merits

The Plaintiff alleges that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment by imposing a harsher punishment on her than on other students who committed less serious infractions. In addition, the Plaintiff alleges that the Defendants improperly discriminated against her under Title IX by preventing her from participating in sports for one year when male athletes, who also committed alcohol related infractions, received

lesser punishments.   Although the Plaintiff also asks the Court to consider the likelihood of

success on the merits in the Article 78 proceeding, that is not within this Court's jurisdiction.

### a. As to the Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that

all persons similarly situated be treated alike." LaTrieste Rest. v. Vill. of Port Chester, 188 F.3d

65, 69 (2d Cir. 1999) (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439,

105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). An individual not alleging invidious discrimination on

the basis of membership in some group, may nevertheless prevail on an equal protection claim

under the "class of one" theory recognized by the Supreme Court in Willowbrook v. Olech, 528

U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). "A class-of-one claim exists 'where the

plaintiff alleges that she has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment.'" Analytical Diagnostic Labs,

Inc. v. Kusel, --- F.3d ----, 2010 WL 3835087, at * 4 (2d Cir. 2010) (quoting Willowbrook v.

Olech, 528 U.S. at 564, 120 S. Ct. at 1073).  The Second Circuit has held that to succeed on a

class-of-one claim, a plaintiff must show:

> (i) no rational person could regard the circumstances of the
> plaintiff to differ from those of a comparator to a degree that would
> justify the differential treatment on the basis of a legitimate
> government policy; and (ii) the similarity in circumstances and
> difference in treatment are sufficient to exclude the possibility that
> the defendants acted on the basis of a mistake.

Id. (quoting Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005)).

The Defendants argue that discretionary government action cannot be the subject of a

class-of-one claim.  However, the Second Circuit has recently held that "Engquist does not bar

all class-of-one claims involving discretionary state action." Kusel, 2010 WL 3835087, at * 6

(distinguishing Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591, 603, 128 S. Ct. 2146,

2146, 170 L. Ed. 2d 975 (2008), which eliminated class-of-one claims for government employees because they "involve discretionary decisionmaking based on a vast array of subjective, individualized assessment.").

As previously noted, Superintendent Agruso stated that the school has interpreted the various policies to require a mandatory one-year suspension from extracurricular, co-curricular, and athletic activities when students are caught in possession of a controlled substance on school grounds or at a school event. (Agruso Aff. ¶¶ 31–32.) Thus, although the Defendants argue that the policy is discretionary, by exercising that discretion to impose the same minimum punishment on all students caught in possession of a controlled substance on school grounds, it is a de-facto non-discretionary policy. See Alfaro v. Labrador, No. 06-CV-1470, 2009 WL 2525128, at *9 (E.D.N.Y. Aug.14, 2009) ("[D]iscretionary decisions, for the purpose of barring class-of-one claims, [are] those that involve discretion that is actually exercised on a day-to-day basis, rather than decisions that are theoretically discretionary but—as a practical matter— actually depend on de facto standards."). However, even if the policies were considered discretionary, it is sufficient for the purposes of sustaining a class-of-one claim, that the Plaintiff has alleged she was singled out for harsher treatment under the policy. See Kusel, 2010 WL 3835087, at *7 ("Similarly, here plaintiffs have a way to distinguish themselves and other labs who are allegedly subject to less scrutiny by DOH: defendants maliciously targeted ADL for increased oversight.").

To prove a class-of-one equal protection violation, the similarly situated individuals must be "prima facie identical" to the plaintiff. Neilson v. D'Angelis, 409 F.3d 100, 104–05 (2d Cir. 2005). Thus, "a class-of-one plaintiff must show, among other things, an 'extremely high degree of similarity between [herself] and the persons to whom [she] compare[s] [herself]' in order to

succeed on an equal protection claim." <u>Doninger v. Niehoff</u>, 527 F.3d 41, 53 (2d Cir. 2008) (quoting <u>Clubside, Inc. v. Valentin</u>, 468 F.3d 144, 159 (2d Cir. 2006)) (alterations in original).

As previously noted, the Defendants disciplined the Plaintiff pursuant to the zero-tolerance policy stating that students "[c]aught in possession of a controlled substance at school or school events [receive] suspension from school plus an automatic 1 year suspension from extra-curricular activities, including athletics." (Agruso Aff. ¶ 32.) Here, the Plaintiff contends she was unreasonably singled out for a punishment that did not fit the definition of her crime because: 1) she was not "caught in possession"; 2) alcohol is not a "controlled substance"; and 3) she was not "at school." However, to the extent she could properly be considered a student who was "[c]aught in possession of a controlled substance at school," the Plaintiff asserts that she was treated differently that other students who committed the same offense without any rational basis. In addition, the Plaintiff also claims that, even if she were treated the same to other students caught in possession of alcohol on school grounds, there is no rational basis for treating her violation more harshly than other students who engage in alcohol related transgression off campus or are found intoxicated at school.

First, the Plaintiff argues there is no rational basis for the mandatory one-year suspension because she was not literally "caught in possession" of alcohol and because alcohol is not a "controlled substance." However, specifically in the context of a disciplinary decision, the Supreme Court has stated that "federal courts [are] not authorized to construe school regulations." <u>Bd. of Educ. of Rogers, Ark. v. McCluskey</u>, 458 U.S. 966, 969, 102 S. Ct. 3469, 3471, 73 L. Ed. 2d 1273 (1982); <u>Wood v. Strickland</u>, 420 U.S. 308, 309, 95 S. Ct. 992, 994, 43 L. Ed. 2d 214 (1975) ("But [section] 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the <u>proper construction of</u>

school regulations. The system of public education that has evolved in this Nation relies

necessarily upon the discretion and judgment of school administrators and school board members

and [section] 1983 was not intended to be a vehicle for federal court correction of errors in the

exercise of that discretion which do not rise to the level of violations of specific constitutional

guarantees.") (emphasis added). Whether the Plaintiff or this Court would agree that a

confession to possessing alcohol is equivalent to being "caught in possession," or that alcohol is

a "controlled substance" is secondary to the schools own interpretation of its policy.

The Plaintiff also contends that she was treated more harshly than other students who

"engaged in alcohol related transgressions." (Pl.'s Br. at 9.) To this extent the Plaintiff identifies

a number of students, male and female, who were caught intoxicated at school or in possession

of alcohol off of school grounds. As an initial matter, a student caught intoxicated, but not in

possession of alcohol is not in the same situation as someone who brings alcohol onto school

grounds. Also, putting aside other situational differences that may prevent the students identified

by the Plaintiff from being relevant comparators, the Plaintiff has failed to provide any evidence

that her punishment ought to be compared to that of students who possessed alcohol off of school

grounds.

The following facts are undisputed: 1) at some point the Plaintiff physically possessed a

bottle containing alcohol; 2) the Plaintiff handed the bottle of alcohol to M.S.; 3) M.S. was

caught with the bottle of alcohol boarding a bus that was located on school property and going to

a school event; and 4) the Plaintiff admitted to Principal Bracco that she handed M.S. the bottle

containing alcohol. At the order to show cause hearing, plaintiff's counsel represented to the

Court that the Plaintiff was not on school grounds when she handed the alcohol to M.S.

Specifically, counsel made two statements to this effect: 1) "Nina was never caught in

possession of alcohol on school grounds. She never gave the alcohol on school grounds" (Rough Tr. 26:19–21); and 2) "Another student gave her the alcohol and she gave it to her not on school grounds" (Rough Tr. 27:19–20). Counsel did not state where the Plaintiff gave M.S. the alcohol; only that it was not on school grounds. In addition, the Plaintiff's brief in support of the instant motion and the accompanying Ottaviano Affidavit, whether intentionally or not, omits any reference to where the Plaintiff was located when she provided M.S. with the alcohol.

Conversely, in the Bracco Affidavit, Principal Bracco states that when the Plaintiff approached him after the Senior Banquet, the Plaintiff "admitted bringing the alcohol onto campus." (Bracco Aff. ¶12.) The Plaintiff and plaintiff's counsel were made aware of the Bracco Affidavit at the order to show cause hearing. The Court granted the Plaintiff the opportunity to respond after she received the Bracco Affidavit. (Rough Tr. 26:9–11.) The Plaintiff could have submitted an affidavit herself or one from M.S. identifying where off-campus the Plaintiff gave M.S. the alcohol. Furthermore, the Plaintiff could have requested an evidentiary hearing to cross-examine Principal Bracco with regard to this statement. However, the Plaintiff chose not to respond in any manner to this important contention by the Defendants and continued to request that the Court decide the motion on the papers submitted on December 15, 2010, which includes the Bracco Affidavit permitted by the Court and filed on December 15th. Thus, with no contradictory evidence in the record at this point as to whether the Plaintiff possessed the alcohol while on campus, and with the Plaintiff having waived the opportunity to cross-examine Principal Bracco with regard to this statement, for the purposes of this motion the Court finds that the Plaintiff should be compared to other students who were disciplined for possessing alcohol on school grounds.

In her Affidavit, Superintendent Agruso states that currently there are four students, two males and two females, who were caught in possession of a controlled substance on school grounds and who are facing the one-year suspension from extracurricular activities.  (Agruso Aff. ¶ 38.)  Agruso further states that after she became superintendent in July of 2008, six students, three males and three females have been caught in possession of a controlled substance on school grounds and have received the one-year suspension from extracurricular activities.  (Agruso Aff. ¶¶ 40–41.)  On her part, the Plaintiff cites two examples of students that she argues were caught in possession of alcohol at school and received a different punishment.

The first example the Plaintiff cites is P.D., a female athlete who allegedly was caught with alcohol in her locker and only received a three day suspension.  The Ottaviano Affidavit and the Plaintiff's brief in support of the instant motion state that this event occurred in the Fall of 2008—after Agruso became superintendent.  (Ottaviano Aff. ¶ 31, Pl.'s Br. at 4.)  However, the federal complaint and the Plaintiff's brief submitted in support of the Article 78 proceeding, states that the incident involving P.D. was in 2007.  (Compl. ¶ 27(a), Pl.'s Article 78 Br. at 11 (attached as Ex. B to the Kleinberg Declaration).)  This discrepancy is troubling because it is unclear whether the previous superintendent had the same policy.  Either way, the Court does not have enough information about the circumstances of P.D.'s violation to know whether it can meet the higher similarity standard of being "prima facie identical."  However, the Court does have enough information to make this comparison as to M.S.,  the second student cited as an example by the Plaintiff.

M.S. is the student who the Plaintiff admitted she gave the alcohol.  The Plaintiff claims that M.S. did not receive the same one-year suspension from extracurricular activities because she recently published an article in the school newspaper.  At the order to show cause hearing, in

the Defendants' opposition to the instant motion, and in the Bracco and Agruso Affidavits, the Defendants' provide an explanation as to the perceived difference in the treatment of M.S. Essentially, the Defendants claim that M.S. received the same one-year suspension from activities as the Plaintiff. They contend that her involvement in the school newspaper was simply an oversight due to the fact that the school newspaper meets during the school day as opposed to other extracurricular activities that meet after school. (See Bracco Aff. ¶¶ 19–23.) The Court finds this explanation to be credible in light of the fact that, upon learning that M.S. was still involved in the school paper, the school immediately informed M.S. and the newspaper advisor that M.S. was not permitted to participate.

In a class-of-one case, "the existence of persons in similar circumstances who received more favorable treatment than the plaintiff is offered to provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose–whether personal or otherwise–is all but certain." Neilson, 409 F.3d at 105. Given the nearly identical treatment of the Plaintiff and M.S., the Court cannot infer any improper purpose for the Defendants' actions. Thus, at this point, the Plaintiff has failed to show a likelihood of success, or a serious question going to success, on her class-of-one Equal Protection claim that she received a harsher punishment than a prima facie identical student caught in possession of alcohol on school grounds.

Finally, the Plaintiff argues that there is no rational basis for her "excessive punishment" in light of her "relatively minor alcohol related infraction." (Pl.'s Br. at 9.) The Plaintiff points to the confusion surrounding the policies to claim that the harsher punishment in comparison to the other alcohol related transgressions—such as in-school intoxication or off-campus possession—was a "'one-time, spontaneous occurrence,' that was not the product of a 'well

thought-out system of decision making.'" (Pl.'s Br. at 8 (citing <u>Santana v. Cook Cty. Bd. Of</u> <u>Review</u>, 700 F. Supp. 2d 1023, 1033 (N.D. Ill. 2010).) In response, the Defendants' explain that the reason they treat on-campus possession different from other alcohol related transgressions is because "[b]ringing the controlled substance on school property creates a danger to each and every student of the District, be it through distribution, consumption, or a combination of both." (Defs.' Br. at 19.)

Thus, contrary to the Plaintiff's argument, the severity of the alcohol related transgression is not the underlying basis for the difference in punishments. Rather, it is the perceived danger posed to other students who are entrusted to the Defendants' care when alcohol is brought onto school grounds. The Court finds this to be a rational basis for the distinction and within the purview of the Defendants who are charged with the safety and welfare of every student in the school. <u>See generally</u> <u>McCluskey</u>, 458 U.S. at 971,102 S. Ct. at 3472 ("It is reasonable to conclude that the regulations <u>require</u> suspension for any drug use, including use of alcohol, on school premises, while <u>permitting</u> suspension for drug use off school premises.") (emphasis added); <u>see also</u> <u>Pico v. Bd. of Ed., Island Trees Union Free School Dist. No. 26</u>, 638 F.2d 404, 427 (2d Cir. 1980) ("Whatever may be a judge's personal view as to the wisdom of its decision, the Board acted on rational and specific grounds relevant to the education and welfare of the school children within its jurisdiction, and it did so fairly and conscientiously.").

### b. As to the Gender Discrimination Claim

Title IX and the Equal Protection Clause both protect individuals from invidious government decision-making based on the characteristic of sex. <u>See</u> 20 U.S.C. § 1681 (1994). Based on the evidence submitted by the parties, the Plaintiff is unlikely to succeed on the gender discrimination claim because the evidence does not support an inference of discrimination. The

Plaintiff claims that male athletes have been caught violating the alcohol policy by being intoxicated on school grounds and possessing alcohol off of school grounds. Although the Plaintiff may argue that all alcohol related transgressions are supposed to be treated the same under the Athletic Participation Policy that is not the policy under which she was punished.

The Defendants have stated and provided evidence as to how the school interprets all of the policies. Under these policies, the students are treated differently based on the type of infraction, not based on gender. The Plaintiff did not provide a single example of a male athlete caught in possession of alcohol on school grounds who received a different punishment. Conversely, the Defendants provide an example of a male athlete, a star wrestler, who was caught in possession of a controlled substance on school grounds and received the same one-year ban on all extracurricular activities, including athletics. (Agruso Aff. ¶ 42.) The one example the Plaintiff does cite of an athlete receiving a lesser punishment is P.D., a <u>female</u> athlete caught with alcohol in her locker who only received a three day suspension. Based on the evidence before the Court, the Court cannot find at this time that the Plaintiff can show a likelihood of success, or even a serious question as to the likelihood of success on the merits, on her gender discrimination claim.

### III. CONCLUSION

The Court does not doubt that Nina is an exemplary student and an outstanding athlete. Also, the Court is sadly mindful of the collegiate opportunities that Nina may miss out on as a result of this situation. However, on the arguments and evidence submitted to the Court, viewing it in the light most favorable to Nina, the Court cannot conclude that she is likely to succeed, or has raised serious issues as to whether she is likely to succeed on her federal claims. Finally, this

decision does not in any way purport to speak to the merits of the Article 78 proceeding still

pending.

As a result, it is hereby:

**ORDERED**, that the Plaintiff's requests for a temporary restraining order and a

preliminary injunction are denied, and it is further

**ORDERED**, that the parties are directed to report to United States Magistrate Judge

Tomlinson to arrange for an expedited discovery schedule.


**SO ORDERED.**

Dated: Central Islip, New York
December 23, 2010

___  _/s/ Arthur D. Spatt_____
  ARTHUR D. SPATT
United States District Judge
